**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| JAZMINE HARRIS, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>vs.<br><br>TOPCO ASSOCIATES, LLC,<br><br>    Defendant. | Case No.<br><br><br>**JURY TRIAL DEMANDED** |

**CLASS ACTION COMPLAINT**

Plaintiff Jazmine Harris ("Plaintiff"), on behalf of herself and all others similarly situated, files this Class Action Complaint against Topco Associates, LLC ("Topco" or "Defendant"), and alleges the following:

**INTRODUCTION**

1. Defendant Topco operates as a strategic sourcing company. Topco provides procurement, quality assurance, packaging, and other services for its food industry member-owners and customers.[1] Topco brands include Top Care®, which offers a variety of products from over-the-counter ("OTC") drugs and first-aid to beauty care and vitamins.[2]

2. Defendant distributes a brand of pain reliever and fever reducer under the "TopCare®" label, including Infants' Pain & Fever Acetaminophen - TopCare® ("Infants' Products") and Children's Pain & Fever Acetaminophen - TopCare® ("Children's Products"), two well-known brand-name OTC medications. The Infants' Products and Children's Products are collectively hereinafter referred to as the "Products."

---

[1] www.bloomberg.com/profile/company/52310Z:US (last visited May 12, 2020).

[2] www.topcarebrand.com/ (last visited May 12, 2020).

3.      Acetaminophen, the active ingredient in the Products, can be dangerous, and perhaps even fatal, if taken in large doses. The potential risks associated with an acetaminophen overdose terrifies parents and caregivers and causes them to be extra careful when buying medicine for their children. Defendant exploits this fear by misleading consumers.

4.      It is the manner in which Defendant labels, prices, and markets the Products in its member-owner brick-and-mortar retail stores, including, but not limited to Hy-Vee, Wegmans, and Giant Eagle[3], that forms the underlying basis for this action.

5.      Defendant's advertisements and marketing representations of the Products in member-owner stores are misleading, untrue, and likely to deceive reasonable consumers. Defendant purposely packages Infants' Products with prominent lettering of the word "infants'" on the product's front-label, while packaging Children's Products with prominent lettering of the word "Children's" on the product's front-label. Accordingly, Defendant distributes, markets, and sells the Products in a manner that deceives reasonable consumers into thinking that infants cannot safely take the Children's Products.

6.      Furthermore, despite the fact that the Products contain the same exact amount of acetaminophen in the same dosage amounts, Defendant markets and sells Infants' Products to consumers, such as Plaintiff, at a substantially higher price than Children's Products. In stores, the Infants' Products can cost three times as much per ounce than Children's Products for the same amount of medicine.

7.      No reasonable consumer would pay two to three times as much for Infants' Products, as compared to Children's Products, unless he or she was deceived into thinking that infants cannot safely take Children's Products.

---

[3] www.topco.com/News/topco-associates-announces-2016-board-of-directors (last visited April 28, 2020).

## JURISDICTION AND VENUE

8.      Jurisdiction and venue are properly vested in this Court because Defendant has its principal place of business in Illinois, and a substantial portion of the acts, events, and/or failure to act giving rise to the claims alleged herein occurred in this judicial district. Additionally, Defendant has substantial business contacts with the State of Illinois, or otherwise avails itself of the markets within Illinois, through promotion, sale, marketing and distribution of the Products in Illinois, to render the exercise of jurisdiction by this Court proper and necessary.

9.      This action is brought pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332 (CAFA). Jurisdiction is vested in this Court in that there is minimal diversity and the aggregate amount in controversy exceeds five million dollars ($5,000,000.00), exclusive of interest and costs.

10.     Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b) – (d) because, *inter alia*, Defendant resides in, and is subject to personal jurisdiction in, this judicial district at the time that Plaintiff commenced this action and because Defendant's contacts within this judicial district are significant and sufficient to subject it to personal jurisdiction. Venue is also appropriate in this judicial district because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this judicial district.

## PARTIES

11.     At all relevant times, Plaintiff Jazmine Harris, has resided in Pittsburgh, Pennsylvania. Plaintiff has been purchasing the Infants' Products for approximately one (1) year. Plaintiff first purchased the Infants' Products for her then one year old infant at Giant Eagle, a Topco member-owner store located at 100 Settlers Ridge Center Drive, Pittsburgh, Pennsylvania 15205-1421.

12.     Plaintiff saw and relied upon the Infants' Products packaging and labeling.

13.     Plaintiff purchased the Infants' Products because she believed that the Infants' Products were specifically formulated and designed for infants based on the marketing and labeling of the Infants' Products. Plaintiff believed that the Infants' Products were different than the Children's Products. If Plaintiff knew that the Infants' Products were nothing more than the

Children's Products, she would not have purchased the Infants' Products or paid a price premium for the Infants' Products.

14. Had Defendant not made the false, misleading, and deceptive representation that the Infants' Products were formulated and designed for "Infants," nor omitted the fact that the Infants' Products were nothing more than the Children's Products with the word "Infants" prominently displayed, Plaintiff would not have been willing to pay the premium for the Infants' Products, or she would not have been willing to purchase the Infants' Products at all. Plaintiff purchased and paid more for the Infants' Products than she would have if she had known the truth about the Infants' Products. The Infants' Products that Plaintiff received were worth less than the Infants' Products for which she paid. Plaintiff was injured in fact and lost money as a result of Defendant's deceptive conduct.

15. Plaintiff desires to purchase "Infants'" products in the future and regularly visit retail locations where such products are sold. If Plaintiff knew that the Infants' Products' labels were truthful and non-misleading, she would continue to purchase the Infants' Products in the future.

16. At present, however, Plaintiff cannot purchase the Infants' Products' because she remains unsure whether the labeling of the Products is, and will be, truthful and non-misleading. If the Infants' Products were in fact different from the Children's Products, or if it were disclosed that the Infants' Products were the same as the Children's Products, Plaintiff would purchase the Products in the immediate future, and she would be willing to pay a price premium if they were in fact specially formulated for infants.

17. Defendant is a corporation incorporated under the laws of Delaware and is a "person" as defined in 33 U.S.C. § 1362(5) and 40 C.F.R. § 122.2.

18. Defendant is, at all times mentioned in this Complaint, a corporation organized and in existence under the laws of the State of Delaware with its principal place of business located at 150 Northwest Point Boulevard, Elk Grove Village, Illinois 60007. Defendant can sue and be sued in this Court.

## FACTUAL ALLEGATIONS

19.     Defendant distributes two different pediatric OTC painkillers—Infants' Products and Children's Products.

20.     Prior to the acts complained herein, liquid acetaminophen marketed for "infants" was only available in 80 mg/0.8 mL or 80 mg/mL concentrations, while liquid acetaminophen marketed for "children" was only available in 160 mg/5 mL concentrations.

21.     The difference in concentrations caused some consumers to accidentally provide the wrong dosage of medicine to their children, thereby causing them to overdose.

22.     Between 2000 and 2009, U.S. Food and Drug Administration (FDA) received reports of twenty (20) children dying from acetaminophen toxicity, and at least three (3) deaths were tied to mix-ups involving the two pediatric medicines.

23.     On December 22, 2011, the FDA informed the public that liquid acetaminophen marketed for infants would only be available in 160 mg/5 mL in order to prevent confusion and accidental acetaminophen toxicity.

24.     Since then, the only differences in liquid acetaminophen marketed for infants versus children has been the price and dosing instrument included with the product (*i.e.*, Defendant's Infants' Products come with a syringe while the Children's Products come with a plastic cup).

25.     The Products have the same 160 milligram concentration of acetaminophen, are interchangeable and therefore suitable for infants and children, adjusting the dosage based only on the weight and age of the child.

26.     Defendant has been engaging in the unfair, unlawful, deceptive, and fraudulent practice of distributing, marketing and selling the same product as two unique medicines, such that parents and caregivers mistakenly believe that they cannot purchase the significantly cheaper Children's Products for an infant.

27.     Defendant misleads consumers by using deceptive marketing techniques which obscure critical facts—that infants can safely take Children's Products and that the Products are exactly the same—from consumers.

28.     Defendant deceives consumers so that they will buy the deceptively-labeled Infants' Products for infants, which cost significantly more than Children's Products, even though the Products contain the same exact amount of acetaminophen in the same dosage amounts.

29.     There are various conventions applied in sub-dividing the pediatric population by age. The FDA classification[4] for infants and children is as follows: infant (1 month to 2 years) and children (2 to 12 years).[5] Consumers may reasonably believe that a product that is labeled and marketed for consumption by infants should only be consumed by those between the ages of one (1) month to two (2) years old.

30.     Defendant distributes, markets, and sells the Products in a manner that deceives reasonable consumers into thinking that infants cannot safely take the Children's Products.

31.     Specifically, Defendant distinguishes the two products by calling one "infants'" and one "children's" in bold, prominent lettering.

---

[4] Guidance for Industry – General Considerations for Pediatric Pharmacokinetic Studies for Drugs and Biological products, Draft Guidance, US FDA, 10 November 1998.

[5] http://archives.who.int/eml/expcom/children/Items/PositionPaperAgeGroups.pdf (last visited April 28, 2020).

 

32.     Additionally, at the bottom right corner of the Infants' Products, Defendant states "Compare to Infants' Tylenol® Oral Suspension active ingredient," while the bottom right corner of the Children's Products states, "Compare to Children's Tylenol® Oral Suspension active ingredient." Through this wording, Defendant attempts to deceive reasonable consumers into believing that the active ingredient in Infant Tylenol® is *different* than the active ingredient in Children's Tylenol®, when it knows that the active ingredient is the same, further inducing reasonable consumers to purchase the more expensive Infants' Products.





33.     Furthermore, the Infants' Products feature a photo of an infant on the principal display panel whereas the Children's Product features a photo of two children, further demonstrating to a reasonable consumer that the Infants' Products are more appropriate for infants.

34.     Defendant further misleads consumers by placing "Ages 2 to 11 Years" on the Children's Products. This enhances the misleading impression that the Children's Product can only be safely taken by children at least 2 years-old.

35.     Furthermore, despite the fact that the Products contain the same exact amount of acetaminophen in the same dosage amounts, Defendant markets and sells Infants' Products to consumers, such as Plaintiff, at a substantially higher cost than the Children's Products. In stores, Infants' Products can cost two to three times as much per ounce over Children's Products for the same amount of medicine.

36.     Defendant knows that consumers, such as Plaintiff, are typically more cautious about what medicine they give to infants, especially when they are giving their infant a product that has caused accidental deaths in the past.

37.     No reasonable consumer would be willing to pay more money—and certainly not two to three times as much per ounce—for Infants' Products unless he or she had good reason to believe that Infants' Products were different than or superior to the Children's Products.

38.     Indeed, Defendant's misrepresentations and omissions, as described above, would be important to a reasonable consumer in deciding whether to purchase Infants' Products.

## **RULE 9(b) ALLEGATIONS**

39.     Defendant made material misrepresentations and failed to adequately disclose that the Products are the same. Except as identified herein, Plaintiff and Class members are unaware, and therefore, unable to identify, the true names and identities of those individuals at Defendant who are responsible for such material misrepresentations and omissions.

40.     Defendant made material misrepresentations regarding Infants' Products. Specifically, Defendant labeled, marketed, and advertised Infants' Products in a manner to indicate to reasonable consumers that they are superior or somehow more appropriate for infants than Children's Products to justify charging the inflated price of Infants' Products. These representations were false and misleading because Infants' Products are the same as Children's Products.

41.     Defendant's advertising, labeling and marketing of the Products contained the material misrepresentations, omissions, and non-disclosures continuously at every point of purchase and consumption throughout the Class Period.

42.     Defendant made numerous misrepresentations on the advertising, labeling, marketing, and pricing of Infants' Products that were designed to, and, in fact, did, mislead Plaintiff and Class members into purchasing Infants' Products.

43.     Defendant made these material misrepresentations, omissions, and non-disclosures for the express purpose of inducing Plaintiff and other reasonable consumers to purchase or

9

otherwise pay a price premium for Infants' Products based on the belief that Infants' Products were specifically designed for infants and different from the identical Children's Products. Defendant profited from the sale of Infants' Products to thousands of unsuspecting consumers.

## CLASS ACTION ALLEGATIONS

44.     Plaintiff seeks to bring this action as a class action, under Federal Rule of Civil Procedure 23, on behalf of herself and all others similarly situated.

45.     Plaintiff seeks to represent the following class: All persons who purchased Infants' Products, at Defendant's stores located throughout the United States, for personal use (the "Nationwide Class").

46.     Plaintiff also bring this suit as a class action on behalf of the following subclass: All persons who purchased Infants' Products, at Defendant's stores located in Pennsylvania, for personal use (the "Pennsylvania Subclass").

47.     The following persons are excluded from the Nationwide Class and Pennsylvania Subclass (collectively, the "Classes"): Defendant, any entity in which Defendant has a controlling interest or which has a controlling interest in Defendant, and Defendant's legal representatives, assigns and successors. Also excluded are the judges to whom this case is assigned and any member of the judge's immediate family.

48.     Plaintiff reserves the right to re-define the Classes prior to class certification.

49.     The Classes satisfy the numerosity, commonality, typicality, adequacy, predominance, and superiority requirement of Federal Rule of Civil Procedure 23(a) and (b)(3).

50.     **Numerosity:** The members of the Classes are so numerous that joinder of all members of the Classes is impracticable. Although the precise number of members of the Classes is unknown to Plaintiff at this time, on information and belief, the proposed Classes contain thousands of purchasers of Infants' Products who have been damaged by Defendant's conduct as alleged herein.

51.     **Existence and Predominance of Common Questions of Law and Fact:** There are questions of law and fact common to the Classes. These questions predominate over individual

questions because the actions of Defendant complained of herein were generally applicable to the Classes. These legal and factual questions include, but are not limited to:

    a.    Whether Infants' Products and Children's Products are the same;

    b.    Whether Defendant knew or should have known that Infants' Products and Children's Products are the same;

    c.    Whether Defendant's conduct and/or omissions in its marketing, pricing and labeling the Infants' product in the manner discussed herein indicated to the members of the Classes that Infants' Products were superior or somehow more appropriate for infants than Children's Products;

    d.    Whether Defendant's misrepresentations and omissions were material to reasonable consumers;

    e.    Whether Defendant's labeling, marketing, and the sale of Infants' Products constitutes false advertising;

    f.    Whether Defendant's conduct injured the Plaintiff and the Classes and, if so, the extent of the damages; and

    g.    The appropriate remedies for Defendant's conduct.

52.    All questions as to the representations and publicly disseminated advertisements and statements attributable to the Defendant at issue herein are similarly common. A determination of Defendant's knowledge regarding the misleading and deceptive nature of the statements made in its website, advertisements, and labels will be applicable to all members of the Classes. Further, whether Defendant violated any applicable state laws and pursued the course of conduct complained of herein, whether Defendant acted intentionally or recklessly in engaging in the conduct described herein, and the extent of the appropriate measure of injunctive and declaratory relief, damages and restitutionary relief are common questions to the Classes.

53.    **Typicality:** Plaintiff's claims are typical of the Classes because Defendant injured all members of the Classes through the uniform misconduct described herein; all members of the Classes were subject to Defendant's false, misleading, and unfair marketing practices and

representations, including the false and misleading claim that Infants' Products were different from Children's Products warranting a premium price; and Plaintiff seeks the same relief as the members of the Classes.

54. Further, there are no defenses available to Defendant that are unique to Plaintiff.

55. **Adequacy of Representation:** Plaintiff is a fair and adequate representative of the Classes because Plaintiff's interests do not conflict with the interests of the members of the Classes. Plaintiff will prosecute this action vigorously and is highly motivated to seek redress against Defendant. Further, Plaintiff has selected competent counsel that is experienced in class action and other complex litigation. Plaintiff and her counsel are committed to prosecuting this action vigorously on behalf of the Classes and have the resources to do so.

56. **Superiority:** The class action mechanism is superior to other available means for the fair and efficient adjudication of this controversy for reasons including but not limited to the following:

a. The damages that individual members of the Classes suffered are small compared to the burden and expense of individual prosecution of the complex and extensive litigation needed to address Defendant's conduct.

b. It would be virtually impossible for the members of the Classes individually to redress effectively the wrongs done to them. Even if they could afford such individual litigation, the court system could not. Individualized litigation would unnecessarily increase the delay and expense to all parties and to the court system and presents a potential for inconsistent or contradictory rulings and judgments. By contrast, the class action device presents far fewer management difficulties, allows the hearing of claims which might otherwise go unaddressed because of the relative expense of bringing individual lawsuits, and provides the benefits of single adjudications, economies of scale, and comprehensive supervision by a single court.

c.     The prosecution of separate actions by the individual members of the Classes would create a risk of inconsistent or varying adjudications with respect to individual members of the Classes, which would establish incompatible standards of conduct for Defendant.

d.     The prosecution of separate actions by individual members of the Classes would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other members of the Classes not parties to adjudications or that would substantively impair or impede their ability to protect their interests.

57.     The claims of the Classes may be certified under Rule 23(b)(1), (b)(2) and/or (b)(3). The members of the Classes seek declaratory and injunctive relief but also seek sizeable monetary relief.

## FIRST CAUSE OF ACTION

### Pennsylvania Unfair Trade Practices Act
### 73 Pa. Cons. Stat. Ann. § 201-1, *et seq.*
### (On behalf of Plaintiff and the Pennsylvania Subclass)

58.     Plaintiff hereby incorporates paragraphs 1-57 as if fully set forth herein.

59.     At all relevant times, Plaintiff has resided in Pittsburgh, Pennsylvania. Plaintiff brings this cause of action on behalf of herself and on behalf of the Pennsylvania Subclass. Upon certification, the Pennsylvania Subclass will consist of more than 100 named plaintiffs.

60.     Defendant is a "person" as that term is defined in 73 Pa. Cons. Stat. § 201-2(2).

61.     The Infants' Products purchased by Plaintiff and members of the Pennsylvania Subclass were implicated in "trade" and "commerce," as meant by 73 Pa. Cons. Stat. § 201-2(3), for personal, family, and/or household purposes, *i.e.*, in connection with Plaintiff's and the members of the Pennsylvania Subclass consumer transactions for those personal, family, and/or household purposes.

62. Defendant engaged in deceptive, unfair, and unlawful trade acts or practices in the conduct of trade or commerce, in violation of 73 Pa. Cons. Stat.§ 201-2, in at least the following ways:

    a. Defendant has violated and continues to violate 73 Pa. Cons. Stat. § 201-2(4)(v) by representing to Plaintiff and the Pennsylvania Subclass that Infants' Products have sponsorship, approval, characteristics, ingredients, benefits or quantities which they do not have;

    b. Defendant has violated and continues to violate 73 Pa. Cons. Stat. § 201-2(4)(ix) by advertising Infants' Products to Plaintiff and the Pennsylvania Subclass with the intent not to sell them as advertised.

    c. Defendant has violated and continues to violate 73 Pa. Cons. Stat. § 201-2(4)(xxi) by engaging in fraudulent and deceptive conduct, which has created confusion and misunderstanding among Plaintiff and the Pennsylvania Subclass. Defendant has deceived and continues to deceive consumers into thinking that infants cannot safely take Children's Products, and that they must buy the more expensive Infants' Products, as described more fully herein. No reasonable consumer would be willing to pay two to three times as much per ounce more unless he or she had good reason to believe that Infants' Products were different than Children's Products.

63. The above unfair and deceptive practices and acts by Defendant were improper and unfair. These acts caused substantial injury to consumers that these consumers could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

64. In distributing, marketing, advertising and labeling Infants' Products, Defendant made, and continues to make, false and misleading statements in order to induce consumers into purchasing Infants' Products on a false premise.

65. In distributing, marketing, advertising and labeling Infants' Products, Defendant failed and continues to fail to make material disclosures, including a disclosure notifying consumers that Infants' Products are the same as the Children's Products.

66. Defendant is aware that the claims that it makes about Infants' Products are false, misleading, without basis, and unreasonable.

67. Defendant engaged in the deceptive conduct alleged above in order to induce the public to purchase the more expensive Infants' Products instead of the Children's Products.

68. In distributing, marketing, advertising and labeling Infants' Products described above, Defendant knew or should have known that its statements regarding the uses and characteristics of Infants' Products were false and misleading.

69. Defendant's misrepresentations of the material facts detailed above constitute deceptive, unfair, and unlawful trade acts or practices in the conduct of trade or commerce, in violation of 73 Pa. Cons. Stat. § 201-2.

70. Defendant had reasonably available alternatives to further its legitimate business interests, other than the conduct described herein.

71. All of the conduct alleged herein occurs and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a course of conduct repeated on hundreds, if not thousands, of occasions every day.

72. Plaintiff and the Pennsylvania Subclass were misled into purchasing Infants' by Defendant's deceptive conduct and misleading advertising as alleged above.

73. Plaintiff and the Pennsylvania Subclass were misled and, because the misrepresentations and omissions were uniform and material, presumably believed that Infants' Products have benefits which they do not; namely that they are more suitable and safer for infants than the Children's Products.

74. Additionally, Defendant's use of various forms of advertising and marketing have deceived and are likely to continue deceiving the consuming public, in violation of 73 Pa. Cons. Stat. § 201-2.

75. As a result of Defendant's wrongful conduct, Plaintiff and the Pennsylvania Subclass have suffered injury-in-fact and have lost money. Indeed, Plaintiff and the Pennsylvania Subclass purchased Infants' Products because of Defendant's misrepresentations that Infants'

Products are a more suitable and safer OTC medicine for infants than Children's Products. Plaintiff and the Pennsylvania Subclass would not have purchased Infants' Products if they had known that the advertising and representations as described herein were false.

76.     Plaintiff and the Pennsylvania Subclass seek relief under 73 Pa. Cons. Stat. § 201-9.2, including, but not limited to, injunctive relief, actual damages or $100 per Class member, whichever is greater, treble damages, and attorneys' fees and costs.

## SECOND CAUSE OF ACTION

**Violation of The Magnuson-Moss Warranty Act**
**15 U.S.C. § 2301 *et seq.***
**(On behalf of Plaintiff and the Nationwide Class)**

77.     Plaintiff hereby incorporates paragraphs 1-57 as if fully set forth herein.

78.     Plaintiff brings this cause of action on behalf of herself and on behalf of the Nationwide Class. Upon certification, the Class will consist of more than 100 named plaintiffs.

79.     The Magnuson-Moss Warranty Act provides a federal remedy for consumers who have been damaged by the failure of a supplier or warrantor to comply with any obligation under a written warranty or implied warranty, or other various obligations established under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*

80.     The Infants' Products are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

81.     Plaintiff and the Nationwide Class members are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

82.     Defendant is the "supplier" and "warrantor" of the Infants' Products within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301(4) & 2301(5).

83.     Defendant represented in writing that the Infants' Products were manufactured or designed for infants by prominently displaying the word "infants'" on the front-label packaging and the product information.

84.     These statements were made in connection with the sale of the Infants' Products and relate to the nature of the Infants' Products and affirm and promise that the Infants' Products

are as represented and, as such, are "written warranties" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6)(A).

85.     As alleged herein, Defendant breached the written warranty by selling consumers Infants' Products that were nothing more than Children's Products with the word "infants" prominently displayed.

86.     The Infants' Products do not conform to Defendant's written warranty and therefore violate the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.* Consequently, Plaintiff and the Nationwide Class have suffered injury and are entitled to damages in an amount to be proven at trial.

87.     On June 15, 2020, Plaintiff, on behalf of herself and the Nationwide Class mailed a pre-litigation letter by certified mail, with return receipt requested, to Defendant notifying that the conduct, as alleged herein, violated the Magnuson-Moss Warranty Act.

### THIRD CAUSE OF ACTION

**Breach of Express Warranty**
**(On behalf of Plaintiff and the Nationwide Class)**

88.     Plaintiff hereby incorporates paragraphs 1-57 as if fully set forth herein.

89.     As part of each contract for the sale of Infants' Products, Defendant represented that the Infants' Products were manufactured or designed for infants by prominently displaying the word "infants'" on the front-label packaging and the product information.

90.     Defendant's representations demonstrated to consumers that the Infants' Products were manufactured, developed, and designed to be used for infants and constituted express warranties that became part of the basis of the bargain between Plaintiff and the Nationwide Class, on the one hand, and Defendant, on the other.

91.     Defendant represented that Infants' Products were manufactured, developed, and designed to be used for infants to induce Plaintiff and the Nationwide Class to purchase Infants' Products, and pay more for them than they otherwise would have had they known the truth.

92.     Plaintiff and the Nationwide Class relied on Defendant's representations that Infants' Products were manufactured, developed, and designed to be used for infants, when it knew that the Children's Products were the same product, yet sold at a significantly lower cost.

93.     Plaintiff and the Nationwide Class have performed all conditions precedent to Defendant's liability under the above-referenced contracts when they purchased the Infants' Products for their ordinary purposes.

94.     Defendant breached its express warranties about Infants' Products because they were nothing more than Children's Products with the word "infants" prominently displayed.

95.     As a result of Defendant's breach of express warranties, Plaintiff and the Nationwide Class were damaged in the amount of the purchase price or the premium they paid for the Infants' Products, together with interest thereon from the date of purchase, in an aggregate amount that Plaintiff will prove at trial.

96.     On June 15, 2020, a reasonable time after they knew or should have known of such breach, Plaintiff, on behalf of herself and the Nationwide Class, sent a notice letter to Defendant which provided notice of Defendant's breach and demanded that Defendant correct, repair, replace, or otherwise rectify the breach complained of herein. The letter also stated that if Defendant refused to do so, a complaint would be filed. Defendant failed to comply with the letter.

97.     Plaintiff and the Nationwide Class seek actual damages and punitive damages for Defendant's breach of warranty, in an amount to be proven at trial.

98.     On June 15, 2020, Plaintiff, on behalf of herself and the Nationwide Class mailed a pre-litigation letter by certified mail, with return receipt requested, to Defendant notifying that the conduct, as alleged herein, breached the express warranty.

## **FOURTH CAUSE OF ACTION**

### **Unjust Enrichment**
### **(On behalf of Plaintiff and the Nationwide Class)**

99.     Plaintiff hereby incorporates paragraphs 1-57 as if fully set forth herein.

100.    Plaintiff brings this cause of action on behalf of herself and on behalf of the Nationwide Class, brings a common law cause of action for unjust enrichment.

101.    Defendant's conduct violated, *inter alia*, state and federal law by distributing, advertising, marketing, and selling Infants' Products while misrepresenting and omitting material facts.

102.    Defendant's unlawful conduct as described in this Complaint allowed Defendant to knowingly realize substantial revenues from selling Infants' Products at the expense of, and to the detriment or impoverishment of, Plaintiff and the Nationwide Class, and to Defendant's benefit and enrichment. Defendant has thereby violated fundamental principles of justice, equity, and good conscience.

103.    Plaintiff and the Nationwide Class conferred significant financial benefits and paid substantial compensation for Infants' Products, which were not as Defendant represented them to be.

104.    Under the common law principles of unjust enrichment, it is inequitable for Defendant to retain the benefits conferred by Plaintiff's and the Nationwide Class' overpayments.

105.    Plaintiff and the Nationwide Class seek disgorgement of all profits resulting from such overpayments and establishment of a constructive trust from which Plaintiff and the Nationwide Class may seek restitution.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of herself and the Classes, prays for judgment as follows:

(a)    Certifying that the action may be maintained as a Class Action and that Plaintiff be appointed the Class Representative and its counsel as Class Counsel;

(b)    Declaring that Defendant is financially responsible for notifying the members of the Class of the pendency of this suit;

(c)    Declaring that Defendant has committed the violations of law alleged herein;

(d)     Providing for any and all injunctive relief the Court deems appropriate;

(e)     Awarding statutory damages in the maximum amount for which the law provides;

(f)     Awarding monetary damages, including but not limited to any compensatory, incidental, or consequential damages in an amount that the Court or jury will determine, in accordance with applicable law;

(g)     Providing for any and all equitable monetary relief the Court deems appropriate;

(h)     Awarding Plaintiff's reasonable costs and expenses of suit, including attorneys' fees;

(i)     Awarding pre- and post-judgment interest to the extent the law allows; and

(j)     For such further relief as this Court may deem just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff demands a trial by jury on all issues so triable.

DATED: July 24, 2020

By:     */s/ Andrew Shamis*
        ANDREW J. SHAMIS, ESQ.
        ashamis@shamisgentile.com
        **SHAMIS & GENTILE, P.A.**
        14 NE 1st Avenue, Suite 1205
        Miami, FL 33132
        Telephone: (305) 479-2299


        */s/ Melissa Weiner*
        MELISSA S. WEINER, ESQ.
          mweiner@pswlaw.com
        JOSEPH C. BOURNE, ESQ.
          jbourne@pswlaw.com
        **PEARSON, SIMON & WARSHAW, LLP**
        800 LaSalle Avenue, Suite 2150
        Minneapolis, MN 55402
        Telephone: (612) 389-0600


        */s/ Scott Edelsberg*
        SCOTT EDELSBERG, ESQ.

scott@edelsberglaw.com
**EDELSBERG LAW, P.A.**
20900 NE 30th Avenue, Suite 417
Aventura, FL 33180
Telephone: (305) 975-3320

*/s/     Rachel Dapeer*
RACHEL DAPEER, ESQ.(*Pro Hac Viche* to be
filed)
Rachel@dapeer.com
**DAPEER LAW, P.A.**
300 S. Biscayne Blvd, #2704
Miami, FL 33131
Telephone: (305) 610-5523

*Attorneys for Plaintiff and the Proposed Class*