IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

JAZMINE HARRIS, individually and on behalf of all others similarly situated,

    Plaintiff,

vs.

TOPCO ASSOCIATES, LLC,

    Defendant.

Case No. 1:20-cv-04355

Honorable Sara L. Ellis

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT TOPCO ASSOCIATES, LLC'S MOTION TO DISMISS**

Plaintiff Jazmine Harris ("Plaintiff"), hereby submits her Response in Opposition to Defendant TopCo Associates, LLC'S ("TopCo" or "Defendant") Motion to Dismiss Plaintiff's First Amended Complaint (ECF No. 30 and 31) and in support thereof states:

**I.    INTRODUCTION**

Plaintiff Jazmine Harris alleges the labeling and marketing of TopCo's over-the-counter pain reliever acetaminophen product for infants ("Infants' Product" or "the Product") is deceptive and violates Pennsylvania's consumer protection statutes and unjustly enriched Defendant. The statements made on the front of every Product sold during the Class Period[1]—including the name Infants' Pain & Fever itself—are misleading because they lead reasonable consumers, like Plaintiff, to believe the Product is specially made for infants or otherwise possesses some other unique medicinal quality for infants. In reality, it is identical to TopCo's over-the-counter

---

[1] Defendant filed a Request for Judicial Notice (ECF No. 20) requesting the Court take judicial notice of the two labels cited in Plaintiff's First Amended Complaint. Plaintiff cannot confirm the accuracy and authenticity of these labels and therefore does not object to the extent that Defendant has accurately represented that these are the labels for all products at issue during the relevant class period.

947586.1

children's acetaminophen product ("Children's Product"). Defendant's conduct harmed Plaintiff and similarly situated consumers, as TopCo charges up to three times more for the Infants' Product even though it contains the same medicine found in the Children's Product.

Mischaracterizing the well-pled allegations in the First Amended Complaint ("FAC"), Defendant's Motion to Dismiss Plaintiff's First Amended Complaint ("Motion") makes four, critically-infirm arguments. **First**, TopCo asserts that Plaintiff's claims are preempted by the Food Drug & Cosmetic Act ("FDCA"), but this argument is premised upon purported obligations set forth under a non-binding "tentative final monograph" from 1988, which has been held to have no preemptive effect. This also ignores the fact that Plaintiff's state law claims are entirely consonant with the FDCA's prohibition on false and misleading labeling, and courts consistently hold that such claims are not preempted.

**Second**, TopCo claims that it does not represent the Infants' Product as having benefits it doesn't have, sold the products as advertised, and Plaintiff does not state a single false or misleading statement. Yet this is belied by the name of the Infants' Product itself, the specific allegations of the FAC, and the case law considering identical arguments and facts. *See Elkies v. Johnson & Johnson Servs., Inc.*, Case No. cv-17-7320-GW (C.D. Cal. 2017) (denying motion to dismiss for identical claims brought under California's consumer protection laws for identical packaging); *Youngblood. v. CVS*, Case No. 2:20-cv-06251-MCS-MRW, ECF No. 31 (C.D. Cal. Oct. 15, 2020) (same).

**Third**, TopCo argues that "pricing differences" between the two products do not create cognizable claims. But this mischaracterizes Plaintiff's claims—nowhere in her FAC does it suggest that the pricing differential between the Infants' and Children's Products is itself false or misleading; instead, it is the separate false and misleading representations made on TopCo's

packaging that *induces* parents of infants to buy the vastly-overpriced Infants' Product. Because TopCo creates a straw man argument untethered to the FAC's allegations and claims, Defendant's Motion should be denied.

**Fourth**, TopCo contends that Plaintiff's claim for unjust enrichment fails only because Plaintiff does not sufficiently allege that Defendant's conduct was false, deceptive, or misleading to a reasonable consumer. However, because Plaintiff sufficiently alleges Defendant's deceptive conduct, Defendant presents no basis to dismiss Plaintiff's unjust enrichment claim.

Accordingly, the Court should deny Defendant's Motion in its entirety[2]. Should the Court grant any portion of the Motion, Plaintiff requests leave to amend.

## II. FACTUAL BACKGROUND

### A. Reasonable Consumers Are Misled by the Product's Packaging.

Before Plaintiff started buying the Infant's Product, it was only available with a concentration of 80 mg/mL of acetaminophen, and Children's was only available with a concentration of 160 mg/5 mL of acetaminophen. FAC ¶ 12. In 2011, after several well-publicized

---

[2] Defendant's attempt to litigate class certification issues in a footnote at the motion to dismiss stage should be rejected. *See* Mot. 4, fn 2. *See, e.g., De Falco v. Vibram USA, Inc.*, No. 12 C 7238, 2013 U.S. Dist. LEXIS 36679, 2013 WL 1122825, at *9 (N.D. Ill. Mar. 18, 2013) ("While there may indeed be issues with the proposed class, the Court believes it is premature to engage in this analysis at the motion to dismiss stage. Rather, these issues are better raised after the parties have had an opportunity to conduct class discovery and fully brief the motion for class certification."); *Miller v. Janssen Pharmaceutica Prods., L.P.*, No. 05-CV-4076-DRH, 2006 U.S. Dist. LEXIS 11113, 2006 WL 488636, at *1—2 (S.D. Ill. Feb. 28, 2006); *Boatwright v. Walgreen Co.*, No. 10 C 3902, 2011 U.S. Dist. LEXIS 22102, 2011 WL 843898, at *2 (N.D. Ill. Mar. 4, 2011) ("Because a class determination decision generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action, a decision denying class status by striking class allegations at the pleading stage is inappropriate."); *Worix v. MedAssets, Inc.*, 869 F. Supp. 2d 893 (N.D. Ill. 2012); *Damasco v. Clearwire Corp.*, 662 F.3d 891, 897 (7th Cir. 2011).

child deaths, manufacturers changed Infant's to 160 mg/5 mL, the same concentration as Children's, to avoid confusion and overdose. *Id.* ¶ 16. Since then, all pediatric acetaminophen has the same formulation. *Id.* ¶ 17.

TopCo nevertheless continued to separately package and market the Infant's Product as a stand-alone product distinct from the Children's Product, even though both Products now contain identical formulations. *Id.* ¶¶ 18-21. This marketing tactic exploits parents' fear that they will give their infants the wrong medicine. Indeed, parents and caregivers, such as Plaintiff, are particularly cautious about what medicine they give to their infants. *Id.* ¶ 29. Parenting resources express the conventional understanding that infants not only should not but *cannot* tolerate medicines meant for older children. *Id.* For example, the popular parenting website "What to Expect" warns: "Always use the infant formulations; never give your baby a medication intended for older kids or adults." *Id.* This conventional understanding holds particularly true for parents when they are giving their infant a medicine that has caused accidental deaths in the past. *Id.*

It is objectively reasonable for consumers to believe that a product called "*Infants'* Pain & Fever Acetaminophen" is specially formulated for infants or otherwise possesses some unique property that makes it exclusively suitable for infant care. *Id.* ¶¶ 3, 32, 36. While Defendant knows that the Infants' Product is identical to its Children's Product, the deceptive packaging exploits parents' conventional understanding that they should buy medicine represented as being for "Infants" for their babies. *Id.* ¶¶ 3, 36. The misleading language and imagery on the Infants' packaging deceive reasonable consumers into believing that the Infants' Product is uniquely made for infants. *Id.* But because the Infants' and Children's Products have the same concentration of acetaminophen, they are interchangeable and equally suitable for infants and children. *Id.* ¶ 21. The only difference between the two is the dosing instrument included with the product (the

Infants' Product comes with a plastic syringe while the Children's Product comes with a plastic cup). *Id.* ¶ 17. Yet nowhere on the Infants' Product packaging does it expressly state that it is interchangeable as Children's Product, though the packaging *does* compare the Product to name-brand Infants' Tylenol. *Id.* ¶¶ 24-25; *see also* ¶ 27 (likewise, the Children's Product does not state it is the same as the Infant's Product). Plaintiff and the Class are therefore misled into overspending. *Id*. ¶ 89.

### B. Plaintiff was Deceived by the Infants' Product Packaging.

Plaintiff Jazmine Harris first bought the Infants' Product for her infant, P.H., at a Giant Eagle, a Topco member-owner store located in Pittsburg, Pennsylvania. FAC ¶ 34. In the following months and throughout P.H.'s infancy, Plaintiff made additional purchases of the Infants' Product. *Id.* ¶ 33.

The image of an infant and representations on the packaging of the Infants' Product caused Plaintiff to believe that the Infants' Product was specially designed for her baby. *Id.* ¶¶ 35-37. Plaintiff bought the Infants' Product because she reasonably believed that it was specially formulated for infants or otherwise possesses some unique medicinal quality. *Id.* The Infants' Product's packaging—including the name "Infants" displayed in bold, prominent lettering, the photo of an infant crawling, the statement: "Compare to Infants' Tylenol Oral Suspension active ingredient," and the statement that the Infants' Product is the only product that should be used with the enclosed syringe—formed the basis for her understanding that the medicine was made for infants. *Id.* ¶¶ 24, 30 ,35-37.

The representations on the Infants' Product packaging are misleading in their own right. However, if a consumer were to compare the Infants' Product to the Children's Product, as TopCo suggests, such a comparison would reinforce the deceptive nature of the Infants' Product. This is because the Children's Product represents it is for older children—it displays an image of two

947586.1                            5

older children and states it is "For Ages 2 to 11 Years." *Id.* ¶ 26.

### III. LEGAL STANDARD

#### A. Motion to Dismiss

When considering a motion to dismiss, a court must "construe [the complaint] in the light most favorable to the nonmoving party, accept well-pleaded facts as true, and draw all inferences in her favor." *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010). A complaint does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct." *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949 (2009). As such, the Court should only dismiss a complaint if the plaintiff's claims are purely speculative and unsupported by the alleged facts and circumstantial evidence. *Id.*

### IV. ARGUMENT

#### A. Plaintiff's Claims Are Not Expressly Preempted

Defendant claims Plaintiff's state law claims are expressly preempted because the Products "are regulated by FDA and sold pursuant to the Drug Monograph Review Process that applies to acetaminophen." Mot. 7. Defendant relies on 21 U.S.C. § 379r(a)'s express preemption of any state law "requirement" "that is different from or in addition to, or that is otherwise not identical with, a requirement" of the FDCA. In support of this conclusion, Defendant relies solely on its claim "***the TFM does not prohibit the labeling of acetaminophen products appropriate for infants as 'Infants'' products***." Mot. 8.

This argument fails on its face. Defendant does not identify any "requirement" of the FDCA at all, let alone one that differs from the requirements of Plaintiff's claims in this case. That

947586.1                                          6

alone puts an end to Defendant's argument: Defendant relies on the fact that the 1998 Tentative Final Monograph on which it relies "***does not prohibit***" labeling products as Infants' Products. But *not prohibiting* something is different than *requiring* it. Defendant does not claim it is *required* to label the Infants' Products as Infants' Products, to show them with a baby on the front of the packaging, or to otherwise make it seem they are particularly suited or formulated for infants.

Closer examination of express preemption law does not improve Defendant's argument. States are free to enforce a requirement that is identical to a requirement under federal law. 28 U.S.C. § 379r(f). A state, therefore, is free to "provid[e] a damage remedy for conduct that would [simultaneously] violate federal law." *Ackerman v. Coca-Cola Co.*, No. CV-09-0395 (JG), 2010 WL 2925955, at *6 (E.D.N.Y. July 21, 2010); *see also Fagan v. Neutrogena Corp.*, No. 5:13-CV-01316-SVW-OP, 2014 WL 92255, at *1 (C.D. Cal. Jan. 8, 2014) (same). Plaintiff's claims are entirely consistent with the FDCA because they are premised on the theory that the Infants' Product labels are false and misleading, and the FDCA specifically prohibits "labeling [that] is false or misleading." 21 U.S.C. § 352(a); *see also* 21 C.F.R. § 330.10(a)(4)(v) ("Labeling shall be clear and truthful in all respects and may not be false or misleading in any particular."). Plaintiff's state law claims are "identical to a requirement" established under federal law (the requirement for labeling to be truthful), and therefore, her claims are not preempted. 21 U.S.C. § 379r(f).

But even if Plaintiff's state law claims were directly in conflict with the 1998 Tentative Final Monograph, they still would not be preempted. There *is no* controlling final monograph that covers acetaminophen products, and thus the FDCA's express preemption provision, 21 U.S.C. § 379r, does not apply to acetaminophen labeling. The 1998 Tentative Final Monograph on which Defendant relies is a *tentative* final monograph; it does not have the same preemptive effect as a *final* monograph would. *Emley v. Wal-Mart Stores, Inc.*, No. 1:17-CV-2350-WTL-TAB, 2019 WL

2642842, at *5 (S.D. Ind. June 27, 2019) ("By its very terms, the tentative final monograph does not have the force of law; therefore, the Defendants cannot be in violation of federal law by failing to comply with it."); *In re Tylenol (Acetaminophen) Mktg., Sales Practices & Prod. Liab. Litig.*, 144 F. Supp. 3d 699, 731 (E.D. Pa. 2015) ("Furthermore, Extra Strength Tylenol was and still is regulated by the Tentative Final Monograph (TFM) which is only a proposed rule. As explained by the FDA itself: 'Under a TFM, manufacturers market products at their own risk and are able to make voluntary adjustments taking into context the information presented in the proposed TFM.'" (citations omitted)). So, too, here. Because Defendant "would not have violated the law by the mere act of adding an additional warning [or clarification] to the label of their acetaminophen products," Plaintiff's claims are not expressly preempted. *Emley*, 2019 WL 2642842, at *7 (citing *Wyeth v. Levine*, 555 U.S. 555 (2009)); *see also In re Tylenol*, 144 F. Supp. 3d at 731 (concluding state law claims were not impliedly preempted).

### B. Plaintiff States a Claim for Violation of the UTPCPL

Topco contends that Plaintiff fails to state a claim under applicable law. In a suit alleging deceptive conduct under the "catchall" provision of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), an action can be brought against an entity if the plaintiff alleges facts satisfying the following elements: (1) a "deceptive act" or "conduct that is likely to deceive a consumer acting reasonably under similar circumstances;" (2) justifiable reliance, in other words that the plaintiff purchased the product because of the alleged deception; and (3) the plaintiff must allege that the justifiable reliance caused ascertainable loss. *Seldon v. Home Loan Servs.*, 647 F. Supp. 2d 451, 470 (E.D. Pa. 2009). Plaintiff's UTPCPL claim is properly pled.

**First**, Topco claims that it is clear from the FAC that Topco never represented that the Infants' Products "have sponsorship, approval, characteristics, ingredients, benefits or quantities

which they do not have." (*See* FAC at ¶76(a); 73 P.S. § 201-2(4)(v).) Topco claims that the FAC does not even allege as much, and that the FAC does not, and cannot, allege that the Product labels are incorrect. However, this could not be further from the truth.

The FAC alleges that, "Plaintiff and the Pennsylvania Subclass purchased Infants' Products because of Defendant's misrepresentations that Infants' Products are a more suitable and safer OTC medicine for infants than Children's Products. Plaintiff and the Pennsylvania Subclass would not have purchased Infants' Products if they had known that the advertising and representations as described herein were false." *See* FAC ¶ 89. Furthermore, the essence of the FAC is that Topco engaged in deceptive labeling of Infants' Products. The FAC alleges that "Defendant deceives consumers into buying the deceptively-labeled Infants' Products for infants, which cost significantly more than the Children's Products, even though both Products are identically-formulated and contain the same amount of acetaminophen in the same dosage amounts." *See* FAC ¶ 21. The FAC illustrates how Topco's own labeling confuses consumers by directing them to only use the Infants' Product for infants and the Children's Product for children—suggesting the Infants' Product is specially designed for infants and can only be taken by infants. *See* FAC ¶¶ 22-31. Contrary to Topco's assertions, the FAC clearly alleges and details how Topco deceptively labeled its Infants' Products. Accordingly, a claim can be stated under the UTPCPL.

**Second**, Topco claims that Plaintiff's speculation that it advertised the Infants' Products "with the intent not to sell them as advertised" is not supported by any fact alleged in the FAC. *See* FAC ¶ 76(b); 73 P.S. § 201-2(4)(ix). This claim is simply false. A claim brought pursuant to 73 P.S. § 201-2(4)(ix) is akin to a claim for false advertising. *Gabriel v. O'Hara*, 534 A.2d 488, 494 n.14 (Pa. Super. Ct. 1987). In fact, both Pennsylvania state and federal courts have ruled that 73 P.S. § 201-2(4)(ix) applies only to claims of false advertising. *Seldon*, 647 F. Supp. 2d at 466;

*see also Karlsson v. FDIC*, 942 F. Supp. 1022, 1023 (E.D. Pa. 1996), *aff'd* 107 F.3d 862 (3d Cir. 1997); *Weinberg v. Sun Co.*, 740 A.2d 1152, 1167 (Pa. Super. Ct. 1999), *rev'd on other grounds*, 565 Pa. 612, 777 A.2d 442 (2001). To set forth a claim for false advertising under this provision of the UTPCPL, a plaintiff must allege: (1) "a defendant's representation is false"; (2) "it actually deceives or has a tendency to deceive"; and (3) "the representation is likely to make a difference in the purchasing decision." *Id.* Here, Plaintiff has set forth a claim for false advertising under this provision of the UTPCPL, 73 P.S. § 201-2(4)(ix). As alleged in the FAC, Topco's deceptive and misleading advertising practices harness the fear of acetaminophen toxicity to trick consumers into purchasing and overpaying for Infants' Product when Children's Product would be just as safe and effective at a fraction of the price. *See* FAC ¶ 32. The FAC alleges that, "Plaintiff and the Pennsylvania Subclass purchased Infants' Products because of Defendant's misrepresentations that Infants' Products are a more suitable and safer OTC medicine for infants than Children's Products. Plaintiff and the Pennsylvania Subclass would not have purchased Infants' Products if they had known that the advertising and representations as described herein were false." *See* FAC ¶ 89. Contrary to Topco's assertions, the FAC details exactly how Plaintiff and the Pennsylvania Subclass were misled into purchasing Infants' Products by Topco's deceptive and misleading advertising. *See* FAC ¶ 86. Accordingly, Plaintiff has set forth a claim for false advertising under 73 P.S. § 201-2(4)(ix).

**Third**, Topco claims that the FAC does not support a claim that Topco engaged in "fraudulent and deceptive conduct." *See* FAC ¶ 76(c); 73 P.S. § 201-2(4)(xxi). Topco further alleges that, "the conclusory allegations in the complaint do not set forth a *single* false or misleading statement that Topco supposedly made about the products." *See* FAC ¶¶ 43-45, 80, 82. To contend that Plaintiff has not set forth a *single* false or misleading statement in the FAC is a

bold and patently false claim. Topco's Motion ignores the concurrently pled misleading and deceptive representation allegations on which Plaintiff's claim is based.

Topco's sole argument here, challenging the pleading of Plaintiff's UTPCPL claim, is that there is **not** a *single* false or misleading statement. To the contrary, the deceptive representations on the Infants' Product packaging include, but are not limited to the following: (1) the statement "Compare to Infants' Tylenol Oral Suspension active ingredient," which reinforces that the medicine was made for infants, *s*FAC ¶ 24(b); (2) the word "Infants" in bold and black lettering, FAC ¶ 24(a); and (3) the front of the Infants' Product box, which displays an image of an infant crawling, FAC ¶ 24. TopCo attempts to litigate the ultimate question in the case—whether a reasonable consumer is likely to be deceived by the Product's packaging—at the pleading stage. But "whether a reasonable consumer would be deceived by a product label or a reasonable consumer's understanding of the term [at issue] are questions of fact that cannot be resolved on a motion to dismiss." *Biffar v. Pinnacle Foods Group, LLC*, No. 16-0873-DRH, 2016 U.S. Dist. LEXIS 177388, at *6 (S.D. Ill. Dec. 22, 2016); *see also Bruton v. Gerber Prod. Co.*, No. 12-CV-02412-LHK, 2014 U.S. Dist. LEXIS 5493, at *11 (N.D. Cal. Jan. 15, 2014) ("whether a reasonable consumer would or would not have been misled by [the] label statements is a question of fact not suitable for resolution on a motion to dismiss."); *Khasin v. Hershey Co.,* No. 12–1862, 2012 WL 5471153, at *7 (N.D. Cal. Nov. 9, 2012) ("the issues Defendant raise[s] ultimately involve questions of fact as to whether Plaintiff was or was not deceived by the labeling; this argument is therefore beyond the scope of this Rule 12(b)(6) motion")).

Here, Plaintiffs plausibly allege the front of a box of the Infant's Product contains representations (including the modifier "*infant's*" describing the acetaminophen product itself, plus a picture of an infant crawling) are likely to deceive consumers into believing that the

Product is specially formulated for infants or otherwise possesses some unique medicinal quality that makes it specifically suited for infants as opposed to older children. FAC ¶¶ 5, 31. These allegations, and nothing more, gave rise to plausible claims under California consumer protection laws (which track Pennsylvania's consumer protection laws) in *Elkies v. Johnson & Johnson Servs., Inc.*, Case No. cv-17-7320-GW, ECF No. 53. (C.D. Cal. 2017), and *Youngblood. v. CVS*, Case No. 2:20-cv-06251-MCS-MRW, ECF No. 31 (C.D. Cal. Oct. 15, 2020), two cases with nearly identical facts, in which the courts denied the defendants' motions to dismiss.

Specifically, in *Elkies* the court found that "[a] picture of a mother-and-baby, along with the word 'Infants,' but without any express disclosure that the medicine in the bottle is exactly the same, and provided at the exact same concentration, as Children's [Product], could lead a significant portion of the general consuming public or of parents of infants and children under two years old, to conclude that Infant's [Product] is unique or specially formulated for children under two." *Id*. at p. 8. Similarly, in *Youngblood*, the court explained, "[w]hile both the [Infant's] Product and Children's Product disclose 'ACETAMINOPHEN 160 mg/5 mL,' they also feature children of different ages and the Product prominently suggests that it is for 'Infant's while instructing consumers to 'Compare to the active ingredients in Infant's Tylenol Oral Suspension.' These features cut against CVS's claim that no reasonable consumer would believe that the Product was specially formulated for infants." *Id.* at 7 (citation omitted).

Topco attempt to dismiss the *Elkies* and *Youngblood* decisions, and cites to the outlier case, *Lokey v. CVS Pharm., Inc.*, No. 20-cv-04782-LB, 2020 U.S. Dist. LEXIS 218087 (N.D. Cal. Nov. 20, 2020), to conclude that TopCo's label was not deceptive as a matter of law. *See* Mot. 12 n.6. *Lokey* is distinguishable because in *Lokey* the complaint focused on the price difference between the Infants' Product and Children's product as the *source* of Defendant's deception. Here, in

contrast, Plaintiff alleges affirmative misleading statements. *See, e.g.*, FAC ¶¶ 24(a), 24(b). Additionally, while the *Lokey* court found the label included a photo of a "child of indeterminate age"[3] on the Infants' Product, TopCo's Infants' Product clearly includes a photo of a baby crawling, strengthening a reasonable consumer's belief that the Infants' Product is specially suitable for infants.

The FAC pleads more than sufficient facts demonstrating deceptive acts that are conduct "likely to deceive a consumer acting reasonably under similar circumstances." *Seldon*, 647 F. Supp. 2d at 470. An act or practice is deceptive if it has a tendency or a capacity to deceive. *Com. ex rel. Corbett v. Peoples Benefit Service, Inc.*, 923 A.2d 1230, 1236 (Pa. Commw. Ct. 2007). "Neither the intention to deceive nor actual deception must be proved; rather it need only be shown that the acts and practices are capable of being interpreted in a misleading way." *Id.* Contrary to Topco's assertions, Plaintiff can, and does, explain in the FAC how a reasonable consumer would believe that the Infants' Product was different from and specially formulated for infants unlike the Children's Product. *See* FAC ¶ 4. The medicine contained in a bottle of Infants' Product is the same active ingredient and formulation (*i.e.*, 160 mg per 5 mL of acetaminophen) in a bottle of the Children's Product. Thus, there is no difference in the medicine sold in the Infants' Product and the Children's Product. But as the FAC alleges, Topco does not disclose this important information anywhere on the Infants' Product packaging (in fact, the front of the box does explicitly compare the Product to name-brand Infants' Tylenol, enforcing the belief that the Infant's Product is specially formulated for infants). *See* FAC ¶ 4. Representing to consumers that the Infants' Products are somehow different or specially formulated so that they—and they alone—should be used in caring for infants is materially deceptive to reasonable consumers.

---

[3] *Lokey*, No. 20-cv-04782-LB at *11-12.

The FAC also clearly pleads reliance and cognizable injury. As it pertains to reliance, during Plaintiff's interactions with the Infants' Products at the store, Plaintiff saw and relied upon the Infants' Products packaging and labeling, which were materially similar to the packaging and labeling described and pictured in paragraph 24 of the FAC. *See* FAC ¶ 35. Specifically, Plaintiff saw that Defendant's Infants' Product was for infants, and, based on the packaging, believed it to be specifically formulated for infants, such as her infant, and purchased the Infants' Product from Topco because of those representations. *See* FAC ¶ 36. Plaintiff was injured in fact and lost money as a result of Defendant's deceptive conduct. *See* FAC ¶ 38. The FAC alleges that "[a]s a result of Defendant's wrongful conduct, Plaintiff and the Pennsylvania Subclass have suffered injury-in-fact and have lost money. Plaintiff and the Pennsylvania Subclass purchased Infants' Products because of Defendant's misrepresentations that Infants' Products are a more suitable and safer OTC medicine for infants than Children's Products. Plaintiff and the Pennsylvania Subclass would not have purchased Infants' Products if they had known that the advertising and representations as described herein were false." *See* FAC ¶ 89. As such, pleading reliance and cognizable injury is not an impediment to stating a claim under the UTPCPL.

Finally, Defendant argues that pricing alone—without an actionable misrepresentation—is not actionable. *See* Mot. 13 (citing *Boris v. Wal-Mart Stores, Inc.*, 35 F. Supp. 3d 1163, 1170 (C.D. Cal. 2014) (pricing decision alone is not actionable as "unfair" trade practice under California law), *aff'd*, 649 F. App'x 424 (9th Cir. 2016), and *aff'd*, 649 F. App'x 424 (9th Cir. 2016)). This argument misses the point. The *Boris* plaintiffs did not allege they were misled by the name of the product. *See id.* at 1168, 1175. As explained above, Defendant's misrepresentations and omissions are deceptive or misleading to a reasonable consumer because they falsely imply that the Infants' Products are formulated to be different and somehow more suitable for infants

than the Children's Products. Plaintiff does not contend the price difference is the *source* of Defendant's deception, so the fact that the Infants' Products cost significantly more than the identical Children's Products is not the legal basis for her claims. Rather, the price difference merely evinces the fact Defendant in fact succeeded in deceiving consumers, thereby capturing a significant price premium.

### C. Plaintiff's Unjust Enrichment Claim Is Adequately Pled

Defendant seeks to dismiss Plaintiff's claim for unjust enrichment solely based on its contention that Plaintiff failed to allege deceptive conduct. *See* Mot. 14. Thus, for the same reasons that Defendant's arguments failed with respect to Plaintiff's claim under the UTPCPL, Defendant's motion to dismiss Plaintiff's unjust enrichment claim fails. Plaintiff has adequately pled unjust enrichment. FAC ¶¶ 99-105.

### V. CONCLUSION

Based on the forgoing, Defendant's Motion should be denied in its entirety. In the alternative, Plaintiff should be given leave to amend to cure any perceived deficiencies.

Dated: January 11, 2021

                                                    Respectfully submitted,

                                                    */s/ Scott Edelsberg*
                                                    SCOTT EDELSBERG, ESQ.
                                                    scott@edelsberglaw.com
                                                    **EDELSBERG LAW, P.A.**
                                                    20900 NE 30th Avenue, Suite 417
                                                    Aventura, FL 33180
                                                    Telephone: (305) 975-3320

                                                    */s/ Melissa Weiner*
                                                    MELISSA S. WEINER, ESQ.
                                                    mweiner@pswlaw.com
                                                    JOSEPH C. BOURNE, ESQ.
                                                    jbourne@pswlaw.com
                                                    **PEARSON, SIMON & WARSHAW, LLP**
                                                      800 LaSalle Avenue, Suite 2150
                                                    Minneapolis, MN 55402

Telephone: (612) 389-0600

/s/    Rachel Dapeer
RACHEL DAPEER, ESQ.(*Pro Hac Viche* to be filed)
Rachel@dapeer.com
**DAPEER LAW, P.A.**
20900 NE 30th Avenue, Suite 417
Aventura, FL 33180
Telephone: (305) 610-5523


/s/ Andrew Shamis
ANDREW J. SHAMIS, ESQ.
ashamis@shamisgentile.com
**SHAMIS & GENTILE, P.A.**
14 NE 1st Avenue, Suite 1205
Miami, FL 33132
Telephone: (305) 479-2299

*Attorneys for Plaintiff and the Proposed Class*

## CERTIFICATE OF SERVICE

The undersigned, an attorney, states that on January 11, 2021, he caused the foregoing to be filed with the Clerk of the United States District Court for the Northern District of Illinois, and thus a copy of this pleading will be served on all counsel of record by the Clerk's CM/ECF system.

/s/      Scott Edelsberg